**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**ANTHONY WILLIAMS,**

        **Plaintiff,**          **CIVIL ACTION NO. 09-CV-13170**

    vs.

                               **DISTRICT JUDGE LAWRENCE P. ZATKOFF**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 11) be DENIED, Defendant's Motion For Summary Judgment (docket no. 12) be GRANTED and that the instant Complaint be dismissed as there was substantial evidence on the record that claimant retains the residual functional capacity for a limited range of light work.

\*\*\*

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for disability and Disability Insurance Benefits and Supplemental Security Income on March 2, 2006 alleging that he had been disabled since July 1, 2005 due to injuries to the head, left shoulder, left leg and hand and headaches. (TR 38, 49-53, 60-61, 82). The Social Security Administration denied benefits. (TR 38-42). Administrative Law Judge Melvyn B. Kalt (ALJ) held a de novo hearing on September 29, 2008 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits or Supplemental Security Income because he was not under a disability within the meaning of the

Social Security Act at any time from March 2, 2006 through the date of the ALJ's January 27, 2009 decision. (TR 17-23, 142). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 3-5). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A. Plaintiff's Testimony

Plaintiff was informed at the hearing of his right to representation and Plaintiff elected to proceed without representation. (TR 144-45). Plaintiff was forty-four years old at the time of the hearing. (TR 147). He has an eleventh grade education and some incomplete electronics trade school education. (TR 148). Plaintiff testified that he had not worked since approximately seven years prior to the hearing, due to difficulty finding a job and problems with his back. (TR 148). He testified that he was injured when he was robbed and hit in the head with a bat. (TR 149). After the injury, he did not work due to blurred vision, back and shoulder pain. (TR 148). Plaintiff testified that he could not work due to memory problems as a result of constant headaches. (TR 148). He stated that he forgets "all the time." (TR 153). He has had the headaches for three or four years and he takes aspirin for his headaches, which he said does not really help. (TR 149). He testified that the doctor prescribed Sedalin to help him sleep at night. (TR 149).

Plaintiff testified that his last hospitalization prior to the hearing was for a cold, which the ALJ noted was bronchitis. (TR 150). Plaintiff initially testified that it was for depression. (TR 150). Plaintiff also testified that in July 2008 he was hospitalized for seven days for alcohol dependence, withdrawal, depression and psychosis. (TR 151). At the time of the hearing he was

2

participating in a treatment center day program. (TR 151). Plaintiff testified that he attends meetings five days a week, approximately four meetings per day. (TR 153-54). Plaintiff was last incarcerated approximately three years prior to the hearing and last used illegal drugs six months prior to the hearing. ( TR 155). He defined the illegal drugs as "beer" and responded that he does not still drink beer. (TR 155). He testified that he last used cocaine over a year prior. (TR 155). He testified that he did not have any doctor's appointments scheduled for his physical complaints, but had an upcoming appointment with his psychiatrist and therapist. (TR 155).

Plaintiff testified that the major cause of his disability is "mostly depression" and "seeing little lights and bugs around all the time." (TR 152). Plaintiff testified that two years before the hearing his sister was shot on his mother's front porch and died in his arms and he has been "really depressed" and "down" since then, which was part of the reason he was regularly seeing a psychiatrist. (TR 156). He also testified that his shoulder and back hurt. (TR 152). Plaintiff disagreed the examining doctor's opinion that he could lift fifty pounds, sit six hours and stand and/or walk two hours. (TR 152).

Plaintiff testified that he does not cook because he does not know how. (TR 154). In a 2006 Function Report Plaintiff reported that during the day he works on his car. (TR 66-70). Plaintiff reported that he does not need to be reminded to go places and does not need anyone to accompany him, he does not have problems getting along with people or authority figures, he can pay attention for "not long", he can sometimes follow spoken instructions and he can handle changes in routine well. (TR 71-73). He reports that his conditions affect his ability to lift, bend, reach, walk, climb stairs and use his hands. (TR 71).

      B.      **Medical Evidence**

*1.*     *Mental Impairments*

Plaintiff was hospitalized at Henry Ford Hospital from July 23, 2008 through July 28, 2008 for alcohol dependence, alcohol withdrawal, depression and psychosis "not otherwise specified." (TR 126-31). On discharge, Plaintiff was prescribed folic acid and a multi-vitamin. (TR 131). The record contains a letter dated August 29, 2008 from Adrian Medina, M.D., at Henry Ford Medical Center stating that Plaintiff is a patient and "is being treated for Alcohol and Cocaine Dependence" and "has Post Traumatic Stress Disorder and possible Major Depression" and is "receiving therapy and medication management to address these conditions." (TR 111).

Plaintiff underwent a state agency psychiatric evaluation on November 24, 2008 with F. Qadir, M.D., psychiatrist. (TR 135-37). Dr. Qadir noted that Plaintiff reported having visual and auditory hallucinations which started approximately one year after he was hit on the head. (TR 135). The doctor noted Plaintiff's report that he was started on medication and outpatient psychiatric treatment but was unable to continue due to insurance problems. (TR 135). The doctor noted Plaintiff's report of a history of alcohol abuse for "most of his life." (TR 135). The doctor noted Plaintiff's report that he last worked in 1998 and he stopped drinking five months prior to the evaluation. (TR 135). The doctor reported that Plaintiff came alone by bus to the clinic. (TR 136).

Plaintiff was reported to be "in touch with reality and was not responding to internal stimuli," psychomotor activity was normal, he had no motivation and had limited insight into his symptoms and did not exaggerate or minimize symptoms. (TR 136). The doctor reported Plaintiff's speech and thought process were slow. (TR 136). Plaintiff was noted to be alert and oriented, was able to repeat six numbers forward and four backward and was able to recall three of three objects after three minutes. (TR 136). Dr. Qadir diagnosed psychosis due to closed head injury, alcohol abuse in early remission, a history of long-term alcohol abuse, closed head injury and left arm injury and

4

assigned a GAF of 48. (TR 137). The doctor noted that Plaintiff "presented with symptoms of visual and auditory hallucinations along with severe headaches, which might affect his ability to do simple labor jobs, but he does not have significant social limitations." (TR 137).

Dr. Qadir completed a Medical Source Statement (mental) the same day and noted that Plaintiff's "symptoms of depression and psychosis affect his concentration and ability to follow directions." (TR 138). He indicated that Plaintiff is has mild restrictions in the ability to understand and remember simple instructions, carry out simple instructions and make judgments on simple work-related decisions, has moderate restrictions in the ability to understand and remember and carry out complex instructions and has marked restrictions in the ability to make judgments on complex work-related decisions. (TR 138). The doctor reported that Plaintiff's complaints of seeing things and hearing voices could affect his social functioning. (TR 139). He opined that Plaintiff has mild restrictions in his ability to interact appropriately with the public, supervisors and co-workers and has moderate restrictions in his ability to respond appropriately to usual work situations and changes in a routine work setting. (TR 139).

2. *Physical Impairments*

Plaintiff reported to the emergency room on February 25, 2006 after being hit in the head with a baseball bat. (TR 99-100). The emergency room physician noted that Plaintiff reported that he was hit in the head and on the arms the day before. (TR 99, 101). She noted Plaintiff's report that he felt fine but had a mild headache with no nausea, vomiting or visual complaints. She noted Plaintiff's report that his girlfriend was cleaning the wound on his head and thought that it was very deep and that he needed to be evaluated at the hospital. (TR 99). A CT showed no acute intracranial abnormality but there was a stallate scalp laceration of approximately 6 centimeters. (TR 100, 90-100). Plaintiff was discharged on February 27, 2006. (TR 101).

A March 14, 2006 x-ray of the left humerus was normal. (TR 107). An x-ray of the cervical spine the same day revealed no fracture and only mild degenerative changes. (TR 109). August 28, 2008 x-rays of the left shoulder, left hand and left tibia and fibula revealed no evidence of acute osseous abnormality. (TR 116-17). On November 9, 2008 Plaintiff reported to the emergency room and was diagnosed with bronchitis. (TR 132-33).

Plaintiff underwent a state agency physical examination on August 28, 2008 with Cynthia Shelby-Lane, M.D. (TR 112-15). Dr. Lane noted the following impressions: Head injury, left shoulder pain, left humerus and left hand pain, and a knot on the left leg, noting that there "is no evidence of any specific knot." (TR 115). The doctor noted that an examination of the left humerus in 2006 was negative. (TR 112). On examination Plaintiff was positive for mild tenderness to palpation over the lower lumbar area. (TR 114). Plaintiff did not use an aid for walking, gait and stance were normal and he was able to get onto and off the table without difficulty. (TR 114). He was able to squat to 50% of the distance and recover and bend to 80% and recover. (TR 114). Grip strength was equal bilaterally. (TR 114). Dr. Shelby-Lane reported a history that was positive for mild depression and noted that Plaintiff had been admitted to Henry Ford Hospital and was being followed by Dr. Meding. (TR 113).

Dr. Shelby-Lane completed a Medical Source Statement and opined that Plaintiff has the ability to lift and/or carry 21 to 50 pounds occasionally and never more than 50 pounds, sit for six hours, stand for two hours and walk for two hours of an eight-hour workday, and may frequently engage in reaching, handling, fingering, feeling and pushing and pulling with both hands and frequent operation of foot controls with both feet but is limited to occasional overhead reaching with the left hand. (TR 119-21). The doctor also opined that Plaintiff is limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling, should never work around unprotected

6

heights, and is limited to occasional exposure to moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold and/or heat, and vibrations. (TR 122-23).

### C. Vocational Expert

The Vocational Expert (VE) classified Plaintiff's past work as a laborer as unskilled and medium to heavy in exertion. (TR 157). The VE testified that if Plaintiff's testimony were fully credited he could not perform his past work or other jobs at the level of substantial gainful activity. (TR 157). He could get another job, but the issue would be whether he could maintain the job, given testimony of headaches, depression and visual hallucinations. (TR 157).

The ALJ asked the VE to consider whether there would be work available if Plaintiff were capable of performing light work with the ability to alternate between sitting and standing at will, and was limited in concentration to performing no more than simple one, two and three-step unskilled operations. (TR 157). The VE testified that Plaintiff could perform jobs in the economy including bench type assembly, sorter and packer, totaling 5,800 jobs regionally. (TR 157). The VE testified that the Dictionary of Occupational Titles (DOT) does not address the sit/stand option.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since his application date of March 2, 2006 and suffers from status post closed head injury, headaches, depression and alcohol abuse, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 19). The ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work. The ALJ found that Plaintiff is not able to perform his past relevant work, but he is able to perform a significant number of jobs in the

economy and therefore he is not suffering from a disability under the Social Security Act. (TR 21-22).

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* at §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ did not properly consider a November 2008 Independent Psychiatric Examination and failed to consider the combined impact of all of Plaintiff's mental

impairments as set forth in the examination report. (Docket no. 11). Plaintiff does not challenge findings related to his physical condition[1].

### C. Analysis: Whether The ALJ Properly Considered The November 2008 Psychiatric Examination

Plaintiff argues that the ALJ did not properly consider the November 24, 2008 state agency psychiatric evaluation by Dr. Qadir, specifically, Dr. Qadir's Medical Source Statement of Ability To Do Work-Related Activities (Mental). Plaintiff argues that the ALJ failed to consider his diagnosis of "psychosis due to Closed Head Injury," his "guarded" prognosis due to "depression and psychosis that affect concentration and ability to follow instructions" and complaints of visual and auditory hallucinations that affect concentration and ability to follow instructions. (Docket no. 11).

The ALJ measured the severity of the mental disorders in terms of four functional restrictions, known as the "B" criteria, by determining the frequency and intensity of the deficits. See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ determined that Plaintiff had mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistent and pace and had at least one or two episodes of decompensation. (TR 19-20). The ALJ properly concluded that the evidence failed to establish the presence of the "C" criteria.

The ALJ considered Dr. Qadir's November 2008 psychiatric report in full and referenced it several times in his decision. In support of his "B" criteria findings, the ALJ pointed out that with respect to activities of daily living Plaintiff is able to take a bus to his own appointments, which is

---

[1] The ALJ correctly pointed out that "[r]adiographic findings of the head, cervical spine, left humerus, left shoulder, left hand, and left tibia/fibula have all been negative." (TR 19, 107, 109, 116-17). The ALJ pointed out that Plaintiff has only mild degenerative changes in the cervical spine. (TR 21).

supported by Dr. Qadir's report. (TR 19, 136). The ALJ also pointed out that Plaintiff can take care of his own personal needs, which is supported by Plaintiff's Function Report, and noted that the psychiatrist concluded that Plaintiff would be able to manage his own benefit funds. (TR 19, 137). In April 2006 Plaintiff reported that he worked on a car during the day and he did not report needing any help with his personal care tasks. (TR 66-67). He denied needing reminders to take care of personal needs or grooming. (TR 68).

The ALJ properly identified evidence in the record on which he based his finding that Plaintiff has mild difficulties in social functioning. (TR 20). The ALJ pointed out that Dr. Qadir noted Plaintiff's report that he is able to get along with his family and had no significant social limitations. (TR 20, 135). The ALJ's finding is consistent with Dr. Qadir's conclusion that Plaintiff would have only mild restrictions in interacting appropriately with the public, supervisors and co-workers. (TR 20, 139). This is consistent with Plaintiff's report that he has no problems getting along with family, friends and neighbors and that he gets along "good" with authority figures. (TR 71-72). Despite Plaintiff's argument that the ALJ failed to consider Plaintiff's complaints of visual and auditory hallucinations which would affect his social functioning, the ALJ considered Plaintiff's reports of occasional hallucinations and Dr. Qadir's report of the same is not inconsistent with the ALJ's findings. (TR 20). Dr. Qadir reported that Plaintiff's had symptoms of visual and auditory hallucinations but that Plaintiff "does not have significant social limitations." (TR 137). The ALJ did not find Plaintiff was without social limitations, and his finding that Plaintiff has mild limitations in social functioning is supported by substantial evidence.

With respect to the ALJ's finding that Plaintiff has moderate limitations in concentration, persistence and pace, the ALJ pointed out that Dr. Qadir opined that Plaintiff would have "mild" restrictions related to tasks involving simple instructions and moderate restrictions related to tasks

11

involving complex instructions. (TR 20, 138). Dr. Qadir's notation that symptoms of depression and psychosis affect Plaintiff's concentration and ability to follow directions is an explanation for Dr. Qadir's assessment that Plaintiff has mild and moderate restrictions related to simple and complex instructions, respectively. The ALJ's findings in these areas are consistent with Dr. Qadir's assessment. (TR 138). The ALJ's finding that Plaintiff has moderate limitations in maintaining concentration, persistence and pace is supported by substantial evidence. Plaintiff did not challenge the ALJ's finding that he has had only one episode of decompensation and the record shows only one episode of decompensation. The ALJ's findings with respect to the "B" criteria are supported by substantial evidence and is consistent with Dr. Qadir's November 24, 2008 psychiatric examination report.

Despite Plaintiff's argument to the contrary, the ALJ also considered the combined impact of Plaintiff's impairments.

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1523, 416.923.

The ALJ discussed and considered the combined effects of Plaintiff's impairments throughout his decision. At step three of his decision, the ALJ determined that Plaintiff does not have an impairment "or combination of impairments that meets or medically equals one of the listed impairments . . . ." (TR 19). The ALJ extensively discussed Plaintiff's mental impairments, the lack of support for physical impairments, and limitations related to mental impairments, including the opinions of record including both mild and moderate limitations, and the physical limitations of record, including the restriction to lifting no more than fifty pounds. *See generally Gooch v. Sec'y*

*of Health & Human Servs.*, 833 F.2d 589, 591 (6th Cir. 1987), cert. denied, 484 U.S. 1075 (1988) (where "the decision itself suggests that the ALJ did consider the combination of impairments, as he was required to do"). "An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990).

The ALJ concluded that Plaintiff has the RFC to perform light work that allows for the ability to alternate between sitting and standing as needed and limited to work involving simple 1, 2 and 3 step operations. (TR 20). The ALJ's RFC limiting Plaintiff to light work is more restrictive than the August 2008 consultative examiner who limited Plaintiff to lifting no more than fifty pounds. (TR 21, 119-21). The limitation to jobs with no more than simple 1 to three step operations is consistent with Dr. Qadir's opinion that Plaintiff has mild restrictions related to simple tasks and moderate restrictions related to more complex tasks, as well as the ALJ's finding that Plaintiff has moderate limitations in maintaining concentration, persistence and pace. The ALJ's RFC limits Plaintiff to simple, not complex, tasks.

The ALJ's decision including the RFC show that he considered Plaintiff's impairments and the effects of his impairments in combination and it is supported by substantial evidence. The ALJ's RFC accurately portrayed Plaintiff's limitations and was supported by substantial evidence.

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The Sixth Circuit has held that hypothetical questions to experts are not required to include lists of claimant's medical impairments. *Webb v. Comm'r*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ presented all of the

limitations of the RFC in his hypothetical question to the VE and the VE testified that such an individual would not be capable of performing Plaintiff's prior work, but that there are jobs available for a person with these limitations. The ALJ's decision that Plaintiff retained the RFC for a restricted range of work is supported by substantial evidence and the ALJ properly relied on the VE's testimony to find that there are significant numbers of jobs in the economy which Plaintiff can perform.

## **VI.** **CONCLUSION**

The ALJ's decision was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket no. 11) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 12) should be GRANTED and the instant Complaint DISMISSED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 28, 2010        s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: September 28, 2010        s/ Lisa C. Bartlett
                                 Case Manager